Ms. McKee, would you announce our second case for argument? Case number 24-1555 from the Eastern District of Arkansas, Barton Hankins v. Crain Automotive Holdings, LLC. Good morning. May it please the Court. My name is Mark Cameron. I'm here on behalf of Appellant Crain Automotive Holdings. Crain has filed this appeal to ask this Court to reverse the District Court's decision granting benefits under a deferred compensation plan or a top hat plan to Mr. Barton Hankins. Mr. Hankins was the Chief Operating Officer of Crain, was a highly compensated executive, and Crain and Mr. Hankins negotiated this deferred compensation plan. Now, our position ultimately is fairly simple at the end of the day. Article 4 of the deferred compensation plan is an essential component to this agreement. Within Article 4, there is a breach provision that references a contemplated agreement, the employment agreement and confidentiality non-compete and non-solicitation agreement. Without that agreement, Article 4 simply cannot function and the parties intended for Article 4 to function, for this agreement to be effective, it was part of the bargain for consideration of the parties. Now... Well, it's entitled forfeiture of payments. And doesn't forfeiture imply something different than something that's supposed to be done in advance of something? Forfeiture sounds after-the-fact. Right. Right. I understand that. I think that... First, I think the language can be read in different ways, but I think that our point here is that even if it is a forfeiture clause, and as Mr. Hankins argues, a condition subsequent, there's effectively the proceeding condition that that agreement that's referenced to must be entered into for Article 4 to be effective. And the language of the deferred compensation plan makes clear that the deferred compensation is conditioned on the terms of Article 4, and that that specific provision should not be severed from the agreement. That is the only provision in the agreement with the opening clause notwithstanding anything in Article 5 to the contrary. And Article 5, Article 5.3 specifically, contains a severability clause where the parties express their intent to have terms severed if permitted under law. Now, this specific provision is the only provision where the parties said, not this one, actually. This is the one clause that we don't want to be severed from this agreement. And that's ultimately exactly what the district court did, was to effectively modify the agreement and take this provision of Article 4 out of it entirely. Now, Crane's position is that it has offered a reasonable interpretation of the deferred compensation plan under Craig versus Pillsbury and reaffirmed in Bender versus Excel by this court, which both make reference to the Goldstein versus Johnson and Johnson opinion out of the Third Circuit. And effectively set the standard of review as de novo, taking it from the position of the district court, looking at whether a deferred compensation plan provides for discretion, looking at whether that discretion was exercised reasonably and in good faith and fair dealing under general contract interpretation, and considering the contract as a unilateral contract, that being there are certain requirements of performance for it to be binding upon the other party. Now, as I noted, the district court effectively has taken Article 4 out of this completely. And I went through a little bit previously of why this was reasonable under the plain language of the agreement, but I want to explore that a little bit further. If we look at Article 3.1, specifically states where it defines the deferred compensation, it specifically states that it is subject to Article 3.2, the vesting provision, and Article 4, the provision that is at issue today. So it's quite clear that the parties intended for that to be part of the consideration for the deferred compensation itself. Now, we look at Article 4 and the language there is clear that a breach of this contemplated agreement would result in forfeiture or the rights to payment ceasing. So that could be that it hasn't been paid yet, we're in the 90-day period potentially where it hasn't been paid out yet, or it's after the 90-day period and it gives Crane the right to seek recovery for a breach of that agreement. I think it's significant that these parties left Article 4 in the agreement, or in the offer when they signed it. Mr. Hankins argues that because it wasn't there, then it shouldn't be effective. But I think that's a stranger result to say that the parties left Article 4 as part of the consideration for deferred compensation, and they left the language in Article 4 shielding it from severance, and they left the language in Article 4 itself knowing that they never intended for it to be effective. That, I think, is a harder conclusion to reach than one where the parties entered into the offer for deferred compensation. They left this language in there knowing that, hey, in the first year, there's not going to be any vesting whatsoever. We have a whole year to figure out this other agreement. Beyond that, we have up until the triggering moment to figure out this other agreement. That appears to be what actually started to happen between the parties, and that would be where we step into some of the extrinsic evidence that's in the administrative record. Specifically, I want to point the court toward Mr. Hankins' affidavit because he also relies heavily on that and his conclusory assertions that he never intended for Article 4 and the breach provision and agreement therein to be essential or critical to the agreement. I would say to that that if we look at what Mr. Hankins actually says in his affidavit, and I specifically point the court on Appendix 158 to paragraphs 9 and 10 where he states, when negotiating the DCP, both Crane and I knew that I had not signed or otherwise agreed to any contract entitled employment agreement or confidentiality, non-compete, and non-solicitation agreement. And then in paragraph 10, to that end, after the DCP was signed on behalf of Crane and me, I engaged in negotiations with Crane. That's a direct indication in the evidence that he submitted that to the end of resolving that that agreement wasn't in place because that's what the parties intended, he offered an employment agreement. Now, he then later admits that that employment agreement did not contain the specific restrictive covenants that are referenced in Article 4 and that are part of the bargain for consideration that incentivized Crane to enter into and to offer this deferred compensation. In addition to that, his affidavit makes several allegations that are just conclusions of all that ultimately question the credibility of the factual allegations therein. Apart from his affidavit, there is Crane's own understanding of what the parties agreed to that is supported by both the plain language and the extrinsic evidence. In addition, there was a memo that Crane believed to have been authored by Mr. Hankins and made that clear in the administrative record. And then finally, as I noted before, just the fact that the parties decided to keep the language in despite their knowledge that this agreement was not in place at that time, the stranger conclusion would be that they left that in to ultimately result in this ambiguity. The more likely reason was that they left that language in there because they intended to enter into that agreement prior to it becoming an enforceable deferred compensation plan. And I would note that this is not unlike the court's decision in Craig and Bender where it affirmed that it was reasonable for the employer to resolve the issue of a vanishing pension, a vanishing part of the agreement itself. And that's effectively what we have here, what Mr. Hankins is arguing for, is that we just ignore an essential aspect of the agreement between the parties. You mentioned Craig for the first time. To what extent is this case controlled by the simple proposition in Craig that Toppat plans are unilateral contracts? Well, I would say to the extent that, from the unilateral contract perspective, it's to the extent that Article IV necessarily requires that the parties enter into and execute the contemplated agreement. And that agreement would require, based on the terms specifically referred to in Article IV, would require Mr. Hankins to relinquish certain rights. The non-compete confidentiality and non-solicitation all contemplate a relinquishing of rights by Mr. Hankins that he would be bound by following the triggering event. And so that would be an additional, in terms of unilateral contract, that would be an additional form of performance that would be required to give effect to Article IV. Now, I think outside of the unilateral contract perspective, if we're just looking at this in simple general contract terms, we have an essential term of an agreement that is not enforceable, that's not reasonably certain, that's too vague to be enforced, and that a court could not, you know, it specifically refers to a breach by the party. And so this is a part of the performance and potential breach, and no court could determine whether that breach has occurred. And so it's clear from the language of the agreement that the party's intended for this to be effective and to be part of the consideration for the deferred compensation. What about the later statement that ordinary contract principles, they refer to, we, this court refers to, say there's a requirement to exercise a duty under contract reasonably? How does that play here? Well, I think that when we look at reasonably, it's referring to the interpretation, whether if there's an ambiguity, whether the party exercises their interpretation of the contract reasonably. There's an ambiguity here because this agreement is completely missing. There's no way to administer this section of Article IV. So then Crain then has to take the step to consider, well, what was the intent of that, of Article IV? Was it intended to be effective, or can we simply sever it? And the opening clause would suggest that you can't simply sever it, and the parties put that language in there for a reason. Don't you run into a problem with just ordinary contract principles under Arkansas law anyhow? Because an agreement to agree in the future is not a contract. I mean, and Arkansas has cases, every state in our circuit has cases that say that, right? And so you're looking at this thing, and you have now made the argument that what you had was an agreement to agree sometime down the road. And all of a sudden, I think there's a giant stop sign there that says, well, whatever, from the beginning, in the oldest days of common law, guys said that, well, an agreement to agree in the future is not an enforceable contract. And look at it, this is not a thing where you can say, the terms are definite enough for us to know what the terms exactly are. So it does look like a classic in agreement to agree in the future if you don't get it signed before you show up. Right, and I think that's where we look at this from the unilateral contract perspective. There was no, at that time that they entered into the offer, there was no binding contract on crane at that point. And so it wasn't really an agreement to agree as much as it was an agreement that we want this provision to be effective, and we want to, and to that end, the agreement has to be put in place at some point. Yeah, but we don't know what the employment agreement contract is going to say. I mean, it's just an amorphous thing out there. It's a pig and a poke. Right, and that's part of the issue that we're bringing up here, is that it creates this ambiguity, and we have to understand what the party's intent was. Well, don't we run right smack dab back into, you know, you say common law principles ought to apply, and the common law principle is that an agreement to agree in the future is not a contract. Well, I don't think that there was a contract to agree. I think the issue here is that if they don't agree, then ultimately this contract can't function. Okay, so what I get is your argument is that you do have a contract. The contract is essentially we're going to have this freestanding contract, and if you don't get there, we don't have a contract. Right. Well, I think if the conclusion is there wasn't an agreement to agree, then ultimately there wasn't a meeting of the minds. There was no this contract can't function without Article IV. So I think it, and I'm running into my rebuttal, but if there are additional questions. Even if you were to consider this to be a contract at the time, and even if you were to consider it to be a conditioned precedent, this man was employed for years. Didn't Crane waive it by not getting an employment contract? I don't think so. I think first I would say his employment, he was compensated for his employment. This isn't necessarily compensation. This is part of it. Right. But I would also say that it's the responsibility of both parties to engage in that, and it contemplates Mr. Hankins also giving up certain rights as well. And Mr. Hankins ultimately offered an employment agreement that did not have the terms that were contemplated herein, which suggests that he was hoping to get the benefit of his bargain without having to execute this agreement. I don't know why in a period of years your client wouldn't have come back with a contract that had what they wanted, and if he didn't sign it, said sayonara before this kicked in. Well, again, I think it's incumbent on both parties. I don't think we can say that that's necessarily Crane's responsibility, and ultimately our position is that that would have been more on Hankins' responsibility to manifest that. If I were Crane and I were looking at a $5 million payment coming due at some point and I didn't have my employment contract, I would probably try to say you're either going to sign this or you're out of here before it comes due. Right. Well, we believe that the language of the contract, of the deferred compensation plan, is clear enough to demonstrate that this was meant to be an essential aspect of the contract, and without it, it just can't function. And both parties, as sophisticated parties, knew that going into it. All right. Thank you, Mr. Cameron. I'll give you a minute in rebuttal. Thank you. May it please the Court. My name is Michael Thompson, and I represent Barton Hankins in this case. And boiled down, our argument is really very simple. You can't breach agreements that don't exist. And if we start, as we have to in any contract case, with just the plain language of the agreement, and Judge Benton, you noted Section 4 is under the heading forfeiture of payments, and that's extremely significant to the analysis here. Section 4 provides that the rights of Mr. Hankins to receive payments shall immediately cease if he breaches the two referenced agreements, an employment agreement and a confidentiality, et cetera, agreement. Now, the rights of Mr. Hankins shall cease suggests these are rights he already has. The rights are his. They're the rights of Mr. Hankins. And shall cease, well, that's in the future tense. And something can't cease if it's not already going. And this Court noted in Ogg v. Fairchild in 2020 that forfeiture provisions are conditioned subsequently because they take away rights that already exist. What about the notwithstanding clause in Section 4? The notwithstanding the anything in Article 5 to the contrary, Your Honor? Your Honor, I don't think anything in Article 5 is to the contrary to this provision. I don't think we need to sever this case. I believe that Article 4 can fully function without the referenced agreements existing. I'm not asking this Court to ignore Article 5. The district court didn't modify it. The district court didn't take Article 4 out of the agreement. What we need to do is answer the question actually posed by Article 4 of the agreement. And Judge Erickson, you raised the idea that is this contract unenforceable as an agreement to agree? And first, I'd like to point out that Crane has never asked or suggested that the contract should be invalidated on that basis. And that argument, therefore, has been waived. And I would ask this Court not to strike down a contract that is very important to Mr. Hankins' claim on a ground that wasn't raised by Crane. But it's not... But what about the agreement referenced in Section 4? Yes, Your Honor. Is that an agreement to agree? No, Your Honor. What it is is an agreement that if... No, no. Go slowly with me. I thought it would be your position that it is an agreement to agree. By the future tense, that the employment agreement, confidentiality, compete and all, agreed to, that part of this contract is an agreement to agree later on something. Your Honor, what I'm saying is that the agreement of the parties is that if those agreements exist and you breach them, your rights shall cease. Because that's the question actually posed by Section 4, is did Barton Hankins breach those agreements? And the answer is no, because you can't breach agreements that don't exist. Maybe I'm not very smart because I'm oftentimes not. But it seems to me that Crane's argument is that if you look at Article 4, is that those references, which are just words that say there's an employment agreement and an agreement not to compete out there, which at this point is just a nothing, right? Because it's never been executed, never been signed. Their argument is, well, no, it is something and it's something that's really important and it should control this contract, right? And my question was, if that thing doesn't exist on the date that you execute the big contract, aren't they simply just agreements to agree in the future as to the terms of the employment agreement and as to the terms of the agreement not to compete and not to solicit? Yes, you are. I think I had misunderstood your statement and the error is mine. I was worried you were saying the entire contract may be invalidated. Well, I get where you could be making that argument, but that argument was never made. The argument was made that there's an enforceable agreement of some sort here, right? An employment agreement that's non-extant and a covenant not to compete, not to solicit, which is non-extant, right? And what I asked is, well, these non-extant things, aren't they simply an agreement to agree in the future? Yes, Your Honor. You can't, in some of the statements Mr. Hankins' affidavit goes to this point, you can't adopt by reference something that doesn't exist. And so they've attempted to have this reference to these other agreements and they don't exist. I guess my argument, though, was that you can still fully function, allow Article IV to fully function by just focusing on the question it actually asks, which is, did Mr. Hankins breach these provisions? And the answer to that has to be no, because they don't exist. So you can't breach a contract that doesn't exist. And under Craig v. Pillsbury, Crane has no discretion at all when the terms are unambiguous, and I don't think there is any ambiguity as to what Article IV is asking us here. And they have no discretion to change the terms of the contract. And that's exactly what we can tell that they've done here and how we can tell that their position is unreasonable and not a good faith interpretation of the Deferred Compensation Plan. Because on page 20 of their opening brief, they swap that word breaches in Article IV for the word complies with. And they say that Section IV, and I'm quoting from the brief now. You said 20, 2-0? Page 20, yes, sir. Okay, proceed. Section IV unambiguously makes all benefits under the Deferred Compensation Plan contingent upon Hankins complying with and relinquishing rights pursuant to an employment agreement and a confidentiality, etc. agreement. On page 16 of their reply brief, Crane acknowledged that they had swapped the word breaches for complies. And they dismissed it as inconsequential semantics. Respectfully, your honors, the terms actually used by a contract are never inconsequential. And the choice of the word breaches is of great importance. Complies with would suggest something that would be Mr. Hankins' burden to prove. Complies with, they'd be raising the same argument that I'm raising. You can't comply with an agreement that doesn't exist just as you can't breach an agreement that doesn't exist. And what they've argued, though, is that no court can determine whether or not you breached the agreement because they don't exist. That's not true. If they were to sue Mr. Hankins for breach of the non-existent employment agreement or the non-existent confidentiality, etc. agreement, they would lose 100% of the time because those agreements don't exist. And an essential element of a claim of breach of contract is that the contract exists. And so their argument runs contrary to the plain language of the agreement. Properly construed, Section 4 is a condition subsequent. It takes away Mr. Hankins' vested rights. We want to look to what it takes for rights to vest under this contract. We look at Section 3.2 of the agreement, which provides that vested rights are earned by being employed on the last day of the year. That's the provision. There was some discussion about the importance of a unilateral contract. Well, that's the provision that marks this as a unilateral contract. Because a unilateral contract is just one that's accepted by conduct rather than words and one where the consideration is actual performance rather than a promise to perform. And so under Section 3.2, Mr. Hankins, to accept Crane's offer of a given year's vesting percentage of deferred compensation plan, he has to actually be employed on that date. He can't promise I'll be employed by that date. He can't say I'm happy to be employed on the end of the year. He has to actually be employed on that date. And that's the only consideration that's required from him. But Section 4 is not phrased as part of Hankins' required performance to accept deferred compensation, to earn deferred compensation. It's phrased as something that can cause the rights he already has to cease. And again, just at the plain language, we know he didn't breach those agreements because they don't exist. Now, there was some discussion of the extrinsic evidence in the record. Of course, we don't reach extrinsic evidence if there's no ambiguity, and I don't see an ambiguity here, either as to what Section 4 asks, the question it asks, or the answer to that question. But if you do reach it, the affidavit of Mr. Hankins provides no support for their position. And, you know, in these cases decided on a stipulated record, this court has said that it's really a form of summary judgment. So I would, one, point out to the fact that we're the only ones who offered any actual proof on this case. And it doesn't support their claim, it supports ours. And Mr. Hankins says the reason I went and tried to negotiate an employment agreement after we negotiated this, because this deferred compensation plan expressly keeps me a NATWELL employee. And I didn't want to be a NATWELL employee when I stood to gain $5 million by making it to a five-year term. That's why he went to it, not because he was worried about the enforceability of this agreement, but because he was worried that nothing in this deferred compensation plan protects him from being fired the next day for any reason they want to, including that they just don't want to pay this agreement. Judge Grunder, you're absolutely correct. A reasonable party who believes that those employment agreements and the confidentiality, et cetera, agreements are essential to the agreement, what they do is they say sign this or you're fired. And absolutely nothing. They could adjust pay, too. What's that? It didn't have to fire. You could adjust pay, change other benefits. They could have. There could be other negotiation counts. But they certainly could have compelled Mr. Hankins. They had a $5 million carrot to compel him to sign whatever they wanted him to sign. Mr. Hankins tried. He offered it. He had no ability to compel them or entice them to sign either of these agreements. Now, what he did do is he did fulfill his part of the deferred compensation plan. He worked to the end of the year of four years. And he fulfilled the purpose of this agreement. The purpose of this agreement stated expressly is to create an incentive for him to tie his compensation to the value of the employer. Well, he did that. He greatly increased the value of his employer year over year. He did a good job. He fulfilled the purpose of this agreement, and now they don't want to pay him. There's also some emails in the record from their counsel. Those aren't proof of anything. They're not sworn emails. They're not an affidavit like Mr. Hankins' affidavit. They're also entirely after he'd already asserted a claim. So, of course, Crane is now going to say that they don't owe him money in their counsel's emails. The last thing, and this isn't in the record, but they've made some references to a memo. And again, the memo they reference in their briefs is not in the record. What is in the record is Mr. Hankins' affidavit where he denies authoring it or providing it to Crane. And so ultimately it would come down to the question of if the court agrees with me that this provision ultimately is unambiguous, it doesn't support their denial of the claim, that's the end of it. They don't have discretion. But if they had any discretion at all in interpreting this, their exercise of that discretion still has to be reasonable. And using... I didn't catch where you contested that they were entitled to deference under this plan. Your Honor, what we... I thought your argument was, or at least that you seemed to be conceding they were entitled to deference. They just didn't do it reasonably. Under Craig v. Pillsbury, what we have... We acknowledge that there is a provision of the Deferred Compensation Plan that gives them final authority to construe the terms. And that gives them discretion as to ambiguous terms. And so what we have argued is that these terms aren't ambiguous, and so their discretion doesn't come into play when they're not ambiguous. And we saw that in Craig. So the ambiguous issue in Craig was whether compensation earned at non-participating affiliates counted towards the Deferred Compensation Plan. And the employer had the discretion to make that decision under the terms of the agreement. But then the definition of compensation was not ambiguous. And this court said, so that's where it ends. They can't use their discretion on this ambiguous term to do anything but enforce this non-ambiguous term. And so what we've argued primarily is their discretion just doesn't come into play. Because Section 4 is plain and simple and can be applied based on its plain text. Ultimately, the district court was right. Crane raised Section 4 just because it was looking for a way to avoid its payment obligations to Mr. Hankins. The judgment of the district court reversing the denial of the claim, awarding Mr. Hankins the $4.9-something million should be affirmed. Thank you. Thank you, Mr. Thompson. Mr. Cameron, I'll give you a minute and rebuttal. Thank you. I appreciate that. First, I'd like to start out by addressing one more very quickly, the issue of this being a contract or an agreement to agree. I don't think it fits squarely into that rule because it's not a contract to require the parties to enter into this agreement. It's essentially saying the parties basically said, for this agreement to be effective, we're going to have to enter into this. So it's not a contract to contract in the future necessarily. There's no requirement that the parties eventually get together and do this. It's an if, then you get this. In addition, I would say that with regard to both parties, Crane being responsible for bringing this forward, again, I think this is a situation where Mr. Hankins has the opportunity to earn this deferred compensation. In this case, Crane provided a reasonable interpretation that it was incumbent on him to accept this, and he ultimately did not do that. And Mr. Hankins' interpretation would ultimately result in Article IV being completely unenforceable, but all of the terms of the agreement that would provide him compensation being enforceable, which is not reasonable. Thank you for your time. Thank you to both counsel for your arguments and appearance. The case is submitted, and we will issue an opinion in due course. That completes our argument calendar for this morning.